# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES MICHAEL PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-671 JED-FHM |
| ) | |
| BOARD OF COUNTY COMMISSIONERS ) | |
| OF TULSA COUNTY, ) | |
| VIC REGALADO, *Sheriff*, and ) | |
| DAVID B PARKER, *Jail Administrator*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is James Michael Phillips' *pro se* civil rights complaint (Doc. 1). He contends Defendants cancelled the Tulsa County Jail's Westlaw subscription and placed him in solitary confinement. Also before the Court are Plaintiff's motions for leave to proceed *in forma pauperis* (Doc. 2) and to appoint counsel (Doc. 3). Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915A, the Court will grant the *in forma pauperis* motion; deny the motion to appoint counsel; and direct Plaintiff to amend his complaint.

## I. Background[1]

In 2018, Plaintiff was detained at the David L. Moss Criminal Justice Center (the "Jail") in Tulsa, Oklahoma. (Doc. 1 at 6). Plaintiff was awaiting trial on Oklahoma robbery charges and preparing a habeas petition in connection with an unrelated Kansas murder conviction. (Doc. 1 at 6, 8). On or about July 23, 2018, Plaintiff visited the law library and discovered the Jail's Westlaw subscription had been cancelled. (Doc. 1 at 6). Plaintiff complained that he was a *pro se* litigant and needed Westlaw to research case law in support of his habeas petition. (*Id.*). According to

---

[1] The background facts are taken from the Complaint (Doc. 1). The Court assumes Plaintiff's allegations are true for the limited purpose of this ruling.

Plaintiff, the available hardcopy materials, such as codes, statutes, and rules, were mostly outdated by more than a decade. (*Id.* at 8). An employee assured Plaintiff the subscription would be renewed in three to four weeks. (*Id.* at 7).

On August 30, 2018, Administrator David Parker informed Plaintiff that the Jail would not renew its Westlaw subscription. (Doc. 1 at 7). In lieu of Westlaw, an employee of the Tulsa County Sheriff's Office was assigned to perform legal research for inmates using Google, an internet search engine. (*Id.*). Plaintiff rejected this offer as "wholly inappropriate" and asked to fund his own legal research subscription. (*Id.*). Parker allegedly denied the request. (*Id.*). By a letter dated October 16, 2018, Plaintiff notified the Tulsa County Board of Commissioners that the Jail's law library was inadequate. (*Id.*). He explained his injuries (*i.e.,* the inability to perform Westlaw research to support his Kansas habeas petition) and asked for a resolution. (*Id.*). Plaintiff sent similar letters to Tulsa County Sheriff Vic Regalado, David Parker, and the American Correctional Association. (*Id.*). Defendants refused to restore Westlaw or take additional action. (*Id.*). Plaintiff contends the inadequacy of the law library impeded his ability to prepare the habeas petition and pretrial motions in his Oklahoma robbery case.[2] (*Id.*).

Plaintiff further contends he was housed in segregation between March and December of 2018. (Doc. 1 at 9). He spent 23 hours per day alone and was only permitted one hour outside of his cell. (*Id.*). This arrangement, combined with the stress of not having Westlaw, allegedly caused Plaintiff to experience depression, anxiety, weight loss, sleeplessness, mood swings, difficulty concentrating, excessive crying, and paranoia.

Plaintiff filed this civil rights complaint (Doc. 1) on December 26, 2018. He names three Defendants: (1) Jail Administrator David Parker; (2) Tulsa County Sheriff Vic Regalado; and (3)

---

[2] It appears Plaintiff waived his right to counsel and represented himself in the Kansas murder case and the Oklahoma robbery case. (Doc. 1; Doc. 3).

the Tulsa Count Board of Commissioners. (*Id.* at 2). The Court will treat Plaintiff's claims regarding Westlaw access as "Count 1," and his segregation claims as "Count II." In the prayer for relief, Plaintiff seeks $28,925 in actual damages and $32,799.60 in punitive damages. (*Id.* at 10).

## II. *In Forma Pauperis* Motion

As an initial matter, Plaintiff filed a motion to prosecute his claims without prepaying the $400 fee for this civil action. (Doc. 2). His financial information reflects that he lacks sufficient funds to prepay the filing fee. Accordingly, the Court will grant the motion (Doc. 2), which reduces the fee to $350, and allow Plaintiff to pay in installments. *See* 28 U.S.C. § 1915(b). Ordinarily, inmates are required to make an initial partial payment which represents 20 percent of the greater of: (1) the average monthly deposits, or (2) average monthly balance in Plaintiff's inmate account(s) for the six-month period preceding the filing of the complaint. *See* 28 U.S.C. § 1915(b)(1). In this case, however, the Court will waive the initial partial payment ($5.29) in light of Plaintiff's representations regarding financial hardship. Plaintiff is advised that he remains obligated to make monthly payments equal to 20 percent of his monthly income until the $350 fee is paid in full. *See* 28 U.S.C. § 1915(b). This obligation remains even after disposition of the case and regardless of whether relief is granted or denied.

## III. Motion to Appoint Counsel

Plaintiff also filed a motion seeking counsel in this case. (Doc. 3). However, "courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take the case" on a *pro bono* basis. *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). The decision to make this request is a matter of discretion. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). Factors guiding the Court's decision include "the merits of the claims, the nature of the

claims, [the inmate's] ability to present the claims, and the complexity of the issues." *Rachel*, 820 F.3d at 397. The claims here are fairly straightforward, and the only requested relief is monetary damages. Further, Plaintiff has not demonstrated an inability to prosecute the action. His complaint contains more detail than a typical *pro se* pleading, and he represented himself in two criminal trials. For these reasons, the motion to appoint counsel (Doc. 3) will be denied.

## IV. Initial Review of the Complaint

### A. Screening Standards

Under the Prison Litigation Reform Act (PLRA), federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a government entity or officer. *See* 28 U.S.C. § 1915A(a). The Court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). To avoid dismissal for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief about the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court must accept all the well-pleaded allegations of the complaint as true, and must construe the allegations in the light most favorable to the plaintiff. *Id.* at 555. In any case, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558.

Because plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal

authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* However, the generous construction "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* The Court need not accept "mere conclusions characterizing pleaded facts," *see Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990), and it will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**B. Count 1 Fails to State a Claim**

The crux of Count 1 is that Parker, Sheriff Regalado, and the Board of Commissioners violated Plaintiff's constitutional rights by refusing to provide a Westlaw subscription at the Jail. This claim implicates the right to access courts under the First Amendment and the Due Process Clause. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (analyzing the claim under the First Amendment and Due Process Clause); *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985) (acknowledging a due process right exists for pretrial detainees, but looking to First Amendment principles). A detainee must receive "a reasonably adequate opportunity to present claim[s] … to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). The right to present claims focuses on the "conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. The right does not require prisons to provide resources guaranteeing an inmates' ability to "conduct generalized research." *Id.* at 354, 360. In fact, there is no per se "right to a law library or to legal assistance" from prison officials, provided the inmate has some method of accessing the courts. *Id.* at 350.

Beyond demonstrating a lack of access, a § 1983 plaintiff must also "show [the issues] … prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). "Conclusory allegations of injury in this respect will not suffice." *Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). *See also Lewis,* 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing his prison's law library or legal assistance program is subpar in some theoretical sense."). To succeed on an access-to-court claim, the plaintiff must describe the legal materials he is seeking, clarify how the prison's resources are inadequate for his queries, and explain how his legal claim is nonfrivolous. *See McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001).

Plaintiff has not sufficiently explained how the lack of Westlaw access hindered his ability to file a Kansas habeas petition. It appears Plaintiff is familiar with the Kansas criminal proceeding, as he represented himself. Most habeas petitions are filed *pro se* and do not require case citations. Petitioners typically provide the general factual basis for their claims, and courts must liberally construe the pleading to determine whether relief is available. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (Courts must liberally construe *pro se* pleadings and determine whether plaintiff could prevail, despite the lack of knowledge about legal theories); *State v. Swisher,* 132 P.3d 1274 (Kan. 2006) (liberally construing *pro se* post-conviction filing under Kansas law). Further, even if some research was necessary, Plaintiff has not indicated what he was looking for or explained why Google - which maintains a free legal database called "Google Scholar" - was inadequate. As one court noted, "the full text of nearly all legal authority … is available via Google Scholar, which is … completely free." *Catz v. Chalker*, 2011 WL 13301955, at *3 (D. Ariz. Apr. 7, 2011), *aff'd*, 512 Fed. App'x 693 (9th Cir. 2013).

Similarly, the Complaint does not demonstrate whether, or to what extent, Jail officials prevented Plaintiff from presenting a defense in the Oklahoma robbery case. Plaintiff only alleges that his trial was continued "as a direct result of his inability to access case law and other legal materials necessary to compose … pretrial motions" and respond to motions filed by the State. (Doc. 1 at 8). Assuming a continuance constitutes an injury, Plaintiff has not indicated what, if any, filings he missed or why the available hardcopies and Google Scholar were inadequate. It is also worth noting that waiving one's constitutional right to counsel in a criminal proceeding does not necessarily amplify his other rights, or entitle him to the electronic resources of a lawyer. *See, e.g., Love v. Summit Cty.*, 776 F.2d 908, 914 (10th Cir. 1985) (detainee failed to show he was denied access to adequate legal assistance to help him prepare and pursue his claims before the courts). The Supreme Court has specifically held that prisons need not enable inmates "to *litigate effectively* once in court." *Lewis*, 518 U.S. at 354 (emphasis in original).

For these reasons, Count 1 fails to state a cognizable constitutional claim.

**C. Count 2 Fails to State a Claim**

In Count 2, Plaintiff alleges he was "unjustly housed" in segregation for at least nine months, where he was alone 23 hours a day. (Doc. 1 at 9). Construed liberally, the Court assumes the Complaint raises a separate due process claim based on Plaintiff's pretrial segregation, and that Plaintiff is not citing the segregation as part of the lack-of-access claim. Plaintiff indicates he regularly visited the Jail's law library, and there appears to be no nexus between the segregation and the access issues. However, if Plaintiff intended to cite the segregation as part of Count I, he may indicate that in his amended complaint.

Under the due process clause, a pretrial detainee may not be punished prior to a lawful conviction.[3] *See Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)). The government may, however, subject those awaiting trial to the conditions and restrictions of incarceration so long as the treatment does not amount to punishment. *Id.* Ordinarily, a detainee does not have a right to be placed in the general prison population, rather than in segregation. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006). The plaintiff must demonstrate the segregation places an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* In determining whether the segregation imposes such a hardship, courts consider whether: (1) the segregation furthers a legitimate penological interest; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, and (3) the placement is indeterminate. *See Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Here, it is entirely unclear why Plaintiff was segregated. The allegations fail to "address both the duration and degree of the plaintiff's restrictions as compared with other inmates." *Trujillo*, 465 F.3d at 1225. Even if Plaintiff provided that information, he has not indicated which defendant, if any, was personally involved in the housing placement. To state a constitutional claim under 42 U.S.C. § 1983, a plaintiff must demonstrate how each defendant was personally involved in the alleged wrongdoing. *See Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018); *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (internal citations omitted). Count II therefore fails to state a claim upon relief can be granted.

---

[3] The Court treats Plaintiff as a pretrial detainee because, although he was already convicted in Kansas, he was at the Tulsa Jail awaiting trial.

### V. Opportunity to Amend

The Tenth Circuit counsels that *pro se* litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The Court will therefore permit Plaintiff to file an amended complaint on or before **May 31, 2019**. Plaintiff is cautioned that a "successful § 1983 complaint must make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original). If Plaintiff declines to timely file an amended complaint or files an amended complaint that similarly fails to state a claim, the Court will dismiss the case without further notice.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) is **granted**; and the initial partial filing fee is **waived**.

2. Plaintiff's motion to appoint counsel (Doc. 3) is **denied.**

3. Plaintiff may file an amended complaint no later than **May 31, 2019**, curing the deficiencies identified herein. If Plaintiff declines to timely file an amended complaint or files another deficient complaint, this action will be dismissed for failure to state a claim upon which relief can be granted.

4. The Clerk shall send Plaintiff a blank civil rights complaint (form PR-01) marked "Amended" and identified as **Case No. 18-CV-671 JED-FHM**.

ORDERED this 1st day of May, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT